UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. SA:14-CR-686-XR[1] |
| Plaintiff, | § | |
| vs. | § | |
| ERNESTO LEMUS CONTRERAS, | § | |
| Defendant. | § | |

ORDER: (1) GRANTING GOVERNMENT'S MOTION FOR REVOCATION OF ORDER OF RELEASE ON BOND; (2) VACATING MAGISTRATE JUDGE'S ORDER OF RELEASE ON BOND

On September 4, 2014, the Court heard oral argument on the Motion for Revocation of Order of Release on Bond filed by the Government. (Dkt. # 13.) Assistant United States Attorney Sarah Wannarka, Esq., argued on behalf of the Government. Eduardo Sillas, Esq., argued on behalf of Defendant. For the reasons stated herein, after de novo review of the record, the Court **GRANTS** the

---

[1] The instant Motion for Revocation of Order of Release on Bond was filed while the case was assigned a miscellaneous number pending indictment. The motion was assigned to the Court for resolution. Subsequently, Defendant was indicted and the case was randomly assigned to U.S. District Judge Xavier Rodriguez in cause number 14-CR-686-XR.

Government's Motion and **VACATES** the Magistrate Judge's order of release on bond.

## BACKGROUND

On August 15, 2014, Defendant was charged by criminal complaint with Possession with Intent to Distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. 841(a)(1) & (b)(1)(A).[2] If convicted, Defendant faces a minimum sentence of ten years imprisonment. The Government asserts that it has calculated Defendant's advisory guidelines at a base level of 38, which results in a range of 235-293 months imprisonment.

On August 27, 2014, after a probable cause and detention hearing, the United States Magistrate Judge set an unsecured bond in the amount of $50,000 and required the Defendant's mother to sign as surety. The Government has filed the instant Motion for Revocation of Order of Release on Bond, appealing the decision of the Magistrate Judge. (Dkt. # 13.) Specifically, the Government contends that there is insufficient evidence to rebut the presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(A) and that no conditions or combination of

---

[2] On September 3, 2014, Defendant was formally indicted by the grand jury on one count of Possession with Intent to Distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. 841(a)(1) & (b)(1)(A). (Dkt. # 20.)

2

conditions will reasonably assure the appearance of defendant and the safety of the community.  (Id. at 1.)

Drug Enforcement Administration ("DEA") Task Force Agent John Flores testified at the detention hearing before the Magistrate Judge.  The Government has provided the following summary of Flores' testimony and the Pre Trial Services Report:

1. Defendant is a permanent legal resident and a citizen of Mexico. Defendant has been in the United States for 25 years.  Upon conviction, Defendant is subject to deportation.

2. Defendant operates a tractor trailer for a living, and travels extensively throughout the United States.

3. DEA received information that a tractor trailer was traveling northbound from Laredo, Texas hauling narcotics.  On August 14, 2014, San Antonio Police Department observed the tractor trailer, driven by the defendant, traveling through San Antonio, Texas, and conducted a traffic stop.  A consent search yielded 12.4 kilograms of ICE methamphetamine concealed in four hollowed out fire extinguishers.

4. After waiving Miranda, Defendant stated he knew he was hauling the drugs from Laredo, Texas to McKinney, Texas.   Defendant was to be paid $3,500.  Defendant made a similar narcotics delivery the week before, again traveling from Laredo, Texas to McKinney, Texas.

5. Defendant does not live in Texas and has no ties to this community.

6. According to the Pre Trial services report, Defendant has lived in California with his wife and children for the past 10 years.

7. At the hearing, Defendant proffered that he is currently separated from his wife and is living with his mother in Indiana.

(Id. at 2–3.)

In his Response to the Government's Motion, Defendant does not contest the Government's version of the facts. However, Defendant asserts that the following factors were considered by the Magistrate Judge in granting his release on bond:

1. The Defendant has been in the United States for 25 years and he is a Legal Permanent Resident;

2. The Defendant has no criminal history;

3. The Defendant had been residing with his wife in California along with his children for the past 10 years but recently separated from her;

4. The Defendant presently resides with his mother in Indiana;

5. The Defendant has been a truck driver for the past 7 years and earns $3,200 monthly;

6. The Defendant has no history of alcohol or drug abuse;

7. The Pre-Trial Services Report states that there are no known factors indicating the Defendant poses a risk of danger to the community;

8. The Pre-Trial Services Report states that to reasonably assure the Defendant's appearance and safety of the community, it recommends the Defendant [be] released on a $50,000.00 Unsecured Appearance Bond.

(Dkt. # 17 at 2–3.)  Further, Defendant advises the Court that his mother, Maria Lemus, did in fact appear at the U.S. District Clerk's Office in Indianapolis, Indiana on August 29, 2014 and executed the proper documents to serve as custodian and surety on Defendant's bond.

4

ANALYSIS

When reviewing a pretrial release order, the district court "acts <u>de novo</u> and makes an independent determination of the proper pretrial detention or conditions for release." <u>United States v. Fortna</u>, 769 F.2d 243, 249 (5th Cir. 1985). In doing so, "the district court, making an independent determination, can order pretrial detention even though the magistrate has refused to do so." <u>United States v. Stanford</u>, 341 F. App'x 979, 981 (5th Cir. 2009) (citing <u>Fortna</u>, 769 F.2d at 249).

A determination of detention may be based on either the likelihood of the defendant's appearance or the safety of others. <u>United States v. Baker</u>, 703 F. Supp. 34, 36 (N.D. Tex. 1989); <u>see</u> <u>Fortna</u>, 769 F.2d at 249 (holding that a defendant may be detained without bond where there is a "lack of reasonable assurance of <u>either</u> the defendant's appearance <u>or</u> the safety of others of the community"). "On the issue of appearance, 'the judicial officer must determine that it is more likely than not that no condition or combination of conditions will reasonably assure an accused's appearance.'" <u>Id.</u> (quoting <u>United States v. Westbrook</u>, 780 F.2d 1185, 1189 (5th Cir. 1986)).

Section 3142(e) sets forth the factors to be considered in determining whether conditions of release exist that will reasonably assure the appearance of the person as required and the safety of any other person and the community:

> (g) Factors to be considered.**--**The judicial officer shall, in determining whether there are conditions of release that will

5

reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(e).

Pursuant to 18 U.S.C. § 3142(e)(3)(A), there is a presumption of detention in cases where there is probable cause to believe that the person committed an offense such as the one Defendant is charged with. See 18 U.S.C. § 3142(e)(3)(A) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community . . . ."); see also United States v. Barker, 876 F.2d 475, 476 (5th Cir. 1989) ("If a judicial officer finds probable cause to believe the defendant committed a violation of the Controlled Substances Act carrying a maximum sentence of ten years or more, a presumption arises that the defendant will present a flight risk and a danger to the community."). "The rebuttable presumption of § 3142(e) shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion; however, the mere production of evidence does not completely rebut the presumption." United States v. Rueben, 974 F.2d 580, 586 (5th Cir. 1992). "[W]hen the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, the presumption of flight has been rebutted." Id.

Here, the Government contends that Defendant did not rebut the presumption of detention. Specifically, the Government argues that Defendant is a citizen of Mexico, does not appear to have any significant ties to any community in

the United States, and drives a tractor trailer for a living. (Dkt. # 13 at 3.) Further, the Government asserts that upon conviction, Defendant faces a significant term of imprisonment and deportation, and the "sheer amount of ICE methamphetamine found in his tractor trailer poses a significant risk to the community." (Id.)

In response, Defendant argues that the information in the Pre-Trial Services report indicates that although Defendant does not have strong ties in Texas, he has close ties his family in California and Indiana. (Dkt. # 17 at 3.)[3] Further, Defendant asserts that he has no prior criminal history, has been in the United States for over twenty-five years, is employed, and has no alcohol or drug abuse problems. (Id.) Defendant points out that Pre-Trial Services recommended conditions or a combination of conditions that would reasonably assure the appearance of the Defendant as required and the safety of the community. Pre-Trial Services itemized several conditions that would assist them in supervising the Defendant and allow him to remain in the community.[4] (Id.)

---

[3] Defendant has attached a list of family contacts, listing the addresses and phone numbers of fifteen relatives in Indiana, six in California, one in Illinois, eight in Wisconsin, and two in Texas. (Id., Ex. 1.)

[4] Pretrial services recommended that Defendant should be released with the following conditions: The defendant shall (1) report to the U.S. Pretrial Services Office as directed; (2) maintain or seek verifiable employment; (3) obtain no passport; (4) abide by the following restrictions on his personal associations, place of abode, or travel: Travel is restricted to Western and Southern District of Texas, and the State of Indianapolis, Indiana; (5) the defendant shall refrain from the excessive use of alcohol; (6) refrain from use or unlawful possession of a narcotic

8

Defendant argues that the amount of methamphetamine involved in the offense, alone, cannot be the only factor to conclude that he is a danger to the community. (Id.)

The Court has reviewed the transcript of the August 27, 2014 hearing. At the hearing, Defendant's counsel proffered information regarding Defendant's family situation. Defense counsel stated that Defendant is separated from his wife, but has three children, ages twenty-one, nineteen, and fourteen, who live in California with Defendant's wife. Defendant has been living with his mother in Indianapolis. Defendant's mother, who is willing to co-sign on his signature bond,[5] is sixty-two years old and has been gainfully employed working at the same mattress factory for the past eleven years. Defendant's mother lives with two of her children, and her daughter (Defendant's sister) works in the same factory. His mother has two brothers in Indianapolis, and Defendant's brother lives there as

---

drug or other controlled substances defined in 21 U.S.C. 802, unless prescribed by a licensed medical practitioner; (7) at the discretion of Pretrial Services, submit to substance abuse treatment which will include evaluation and testing, as well as education, in-patient or out-patient treatment, and/or participation in support groups (AA/NA); (8) the defendant shall submit to any method of testing required by the Pretrial Services Office of the supervising officer for determining whether the defendant is using a prohibitive substance. Such methods may be used with random frequency and include urine testing, the wear of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing; (9) Mrs. Maria Lemus (mother) or Oscar Gutierrez (brother) shall sign as custodian and surety on the bond.

[5] Defense counsel further stated at the hearing that Defendant's brother, Oscar Gutierrez, was also willing to co-sign on the signature bond.

well.  Additionally, defense counsel stated that all of Defendant's family is in the United States, and he has never had a relationship with his father.

Defense counsel also proffered that Defendant came to the United States at age fifteen, is now forty-six years of age, and has been gainfully employed for over twenty-five years.  While Defendant does not have ties to the community in the Western District of Texas, defense counsel argued that he does have significant ties in Indianapolis.  In addition, defense counsel stated that Defendant would be able to gain employment at a phone company in Indianapolis where he used to work, driving locally for the company in the Indianapolis area.  Additionally, Defendant does not have a passport.

The Government argued that Defendant is facing a significant sentence and the totality of the circumstances shows that he does not have stable ties to any community.  Additionally, the Government argued that Defendant is employed as a truck driver and as such has maintained a "mobile" life; thus, the Government asserted that for Defendant to travel would be a non-issue considering he spends his life driving for a living.  The Government also pointed out that Defendant is a citizen of Mexico, and although he has been in the United States for some time, the first part of his life was in another country.  Further, the Government argued that the fact that Defendant does not have a passport is of no consequence because if he is fleeing the Court he is not likely to "do it the right

way" and go through passport control.  In sum, the Government argued that the possible sentence, the nature of Defendant's job, and the fact that the first half of his life was in Mexico, together, demonstrate that no conditions that can assure his appearance in court.  The Government also argued that Defendant poses a danger to the community due to the large amount of drugs involved in the offense (twelve kilograms).

The Magistrate Judge concluded that the following factors supported the presumption in this case: the weight of the evidence, the fact that Defendant resided in two different places (California and Indiana), and that Defendant is a citizen of Mexico and not of this county.  However, the Magistrate Judge concluded that the following were strong factors rebutting the presumption: Defendant's long history of connection with his family, his long work history, lack of criminal history, and thirty-one years living in this country.  Those reasons, combined with the information in the Pre-trial Services report and addendum and Defendant's mother's willingness to sign on as a surety for a bond, led to the Magistrate Judge's conclusion that conditions existed that would allow Defendant to be released on bond.  Accordingly, the Magistrate Judge ordered conditions of release in Defendant's case, adopting those conditions recommended by Pre-trial Services with minor changes.

At the September 4, 2014 hearing before the Court on the instant Motion, the Government again presented the testimony of Flores, the DEA case agent. Flores's testimony was largely the same as that presented at the August 27 hearing. Although no other witnesses were called, Defendant's counsel again argued on Defendant's behalf.

Although the offense Defendant is charged with carries with it a presumption that Defendant will present a flight risk and a danger to the community, that presumption may be rebutted. Here, the weight of the evidence[6] against Defendant is substantial—according to the Government's evidence presented at the hearing, which was not rebutted, Defendant consented to a search of the vehicle, signing a consent-to-search form. After given his Miranda rights, Defendant admitted to transporting the drugs from Laredo, Texas, to McKinney, Texas, for a sum of money. Further, the DEA case agent testified that Defendant informed him as to who recruited him and also knew where the drugs originated from. Moreover, although Defendant has no prior criminal history, lack of criminal history does not necessarily equate with lack of criminal activity—the Government presented testimony at the hearing that Defendant admitted to

---

[6] The Court makes clear that Defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt; nevertheless, § 3142(e) sets forth the weight of the evidence as one of the factors to be considered in determining whether conditions of release exist that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

smuggling drugs along the same route at least once prior.  Defendant proffered no evidence in rebuttal.

As to the likelihood of Defendant's appearance, defense counsel argued that Defendant has significant family ties in Indianapolis and California; however, testimony was presented that although Defendant uses his California address that is on his driver's license, he has been separated from his wife for some time and does not live there, but sometimes spends time in Indianapolis and also sometimes spends time with a girlfriend in Pasadena, Texas.  The Defendant's transient lifestyle weighs heavily in favor of finding that he is a flight risk. Furthermore, the willingness of his mother to co-sign on a $50,000 unsecured bond does not give the Court much assurance that Defendant is likely to appear in Court. If Defendant flees the country, the Government may at best obtain a judgment against Defendant's mother, but has no security interest to satisfy that judgment.

Perhaps weighing most heavily is Defendant's status as a legal permanent resident and citizen of Mexico.  If convicted, Defendant faces deportation after serving a lengthy sentence.  Defendant, a forty-six year old man, faces a potential sentence of up to twenty-four years, according the Government's calculation of his guideline range.  Such a substantial sentence, in combination with the likelihood of eventual deportation, weighs heavily in favor of finding that Defendant poses a significant flight risk.

After <u>de novo</u> review, the Court concludes that for the reasons stated herein and also on the record, Defendant has not rebutted the presumption that no condition or combination of conditions will reasonably assure Defendant's appearance. Accordingly, the Court **GRANTS** the Government's Motion for Revocation of Order of Release on Bond (Dkt. # 13) and **VACATES** the Magistrate Judge's order of release on bond.

## CONCLUSION

For the reasons stated above, the Government's Motion for Revocation of Order of Release on Bond is **GRANTED**. (Dkt. # 13.) Defendant is ordered detained without bond pending trial.

IT IS SO ORDERED.

DATED: San Antonio, Texas, September 5, 2014.

David Alan Ezra
Senior United States Distict Judge